**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LAKISHA G. GILES,** *individually and on* | ) | |
| *behalf of all similarly situated individuals,* | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 11-00405-KD-M** |
| | ) | |
| **WELLS FARGO BANK, N.A.,** | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (Docs. 27, 28, 34), Plaintiff's Response (Doc. 36) and Defendant's Reply (Doc. 41); Plaintiff's Motion for Summary Judgment (Docs. 29, 30, 31), Defendant's Response (Doc. 33) and Plaintiff's Reply (Doc. 40); and the parties' arguments during the August 27, 2012 summary judgment hearing.

**I.    Factual Background**

On November 14, 2007, Giles executed a $63,000.00 Promissory Note with America South Mortgage Corporation secured by a mortgage for real property in Mobile, Alabama. (Doc. 2 at 2l; Doc. 30-1; Doc. 28-1 at 7-22; Doc. 30-2). The Mortgage also identifies America South as the owner of the loan. (Id.) The mortgage also indicates that legal title to the mortgage is held by MERS; that MERS "is acting solely as a nominee for Lender and Lender's successors and assigns[;]" that MERS is granted the power of sale; and that "MERS holds only legal title to the interest granted by Borrower…but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successor and assigns) has the right[] to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender…" (Doc. 30-1 at 3; Doc. 28-1 at 7, 9). In connection with this loan, America South executed an allonge in favor of Amtrust Bank (paid to the order of

Amtrust Bank), assigning all of America South's interest in the Note to Amtrust Bank. (Doc. 28-1 at 3 (Dep. Shanabrook at 27-29); Doc. 28-1 at 23; Doc. 30-2 at 3; Doc. 30-10 at 2 (Dep. Brust at 53)). Subsequently Amtrust Bank endorsed the allonge in blank. (Id.) (Doc. 30-2; Doc. 30-3 at 26-29 (Dep. Shanabrook)). The endorsements are not dated. On December 6, 2007, Giles' Loan was purchased by Federal National Mortgage Association ("Fannie Mae"). (Doc. 28-1).

On April 25, 2008, Wells Fargo notified Giles that effective May 1, 2008, Wells Fargo became the servicer for the Loan, which at that time was owned by Fannie Mae. (Doc. 28-1; Doc. 28-2). The original Note has been in Wells Fargo's vault in Minneapolis, MN since 2008. (Doc. 30-3 at 29 (Dep. Shanabrook); Doc. 28-1 at 3, 5 (Dep. Shanabrook at 29, 46)). Wells Fargo originally held the Note as a Custodian pursuant to the Fannie Mae Guidelines which govern their relationship. (Doc. 30-3 at 29 (Dep. Shanabrook); Doc. 28-1 at 3 (Dep. Shanabrook at 29)).

During 2009-2010, after Giles endeavored to modify her mortgage and executed a HAMP modification, she fell behind on her payments and went into default. (Doc. 28-1; Doc. 30-5 at 1-4 (Aff. Giles)). On June 15, 2010, counsel for Wells Fargo sent Giles a Notice of Acceleration of Promissory Note and Mortgage, stating that the mortgage had been transferred and assigned to Wells Fargo and that Wells Fargo was exercising, as the lender, the right to accelerate the sums owed under the promissory note. (Doc. 30-6; Doc. 28-1 at 30; Doc. 30-5 at 3 (Aff. Giles)).

On July 1, 2010, MERS, acting on behalf of the Lender, executed an "Assignment of Mortgage" which transferred the "Mortgage, together with the note and indebtedness secured by the Mortgage, and all interest of the undersigned [MERS] in and to the property described in said Mortgage[]" and "*all* right, title and interest" of MERS to Wells Fargo; the Assignment was

recorded in the Mobile County Probate Court on July 12, 2010.  (Doc. 30-7; Doc. 28-1 at 25; Doc. 28-1 at 4 (Dep. Shanabrook at 43)).  According to Wells Fargo representative Brust, this was done "[j]ust for the sole purpose of foreclosure."  (Doc. 30-10 at 2 (Dep. Brust at 51-52)). Brust testified that with the Assignment, Wells Fargo held the ownership rights to Giles' loan. (Id.)  The purpose of the Assignment was to allow Wells Fargo to conduct the foreclosure sale of Giles' home, in its own name: "because we can't foreclose on the name of a government entity [Fannie Mae]."  (Doc. 30-10 at 51-52 (Dep. Brust)).  See also Doc 28-1 at 4 (Dep. Shanabrook at 42-43) (explaining that the purpose of the mortgage was to be able to place it in Wells Fargo's name so that the bank can then act on behalf of the investor (Fannie Mae) and foreclose). The Assignment was created because there was no title document reflecting Wells Fargo as the record mortgagee, which was required to foreclose in Alabama.  (Doc. 28-1 at 5, 6 (Dep. Shanabrook at 48, 56)).  Wells Fargo did not provide any Notice of New Creditor to Giles.  (Doc 30-3 at  2 (Dep. Shanabrook at 15-16)).

On July 8, 2010, counsel for Wells Fargo sent Giles a second letter stating that "the mortgage loan with them [Wells Fargo] is currently in default" and "we have been instructed to foreclose[.]"  (Doc. 28-1 at 31-33).  Attached to the letter was a foreclosure notice which stated that Wells Fargo would conduct a foreclosure sale on August 6, 2010.  (Id.)  This notice was published in the Mobile Press Register and stated that the mortgage was "transferred and assigned" to Wells Fargo and that Wells Fargo would execute the power of sale and sell Giles' home "for the purpose of paying the indebtedness secured by said mortgage."  (Id. at 32-33).

On July 21, 2010, Wells Fargo informed Giles that she had been approved for a Special Forbearance Plan scheduling specific payments for August, September and October 2010; she executed same and began making the scheduled payments.  (Doc. 30-5 at 3-5 (Aff. Giles at ¶9-

3

14); Doc. 30-8).   The Special Forbearance Plan was issued by Wells Fargo as the Lender.  (Doc. 30-8).

On October 1, 2010, Wells Fargo conducted a foreclosure sale of Giles' property in its own name (neither Fannie Mae nor any other entity was the foreclosing entity).  (Doc. 30-5; Doc. 30-8; Doc. 28-1 at 4 (Dep. Shanabrook at 42-43); Doc. 30-3 at 5 (Dep. Shanabrook at 42-43); Doc. 30-5 at 5 (Aff. Giles at ¶14)).  Fannie Mae was the highest bidder and purchased the property at the sale.  (Doc. 30-10 at 2 (Dep. Brust at 52)).  Also on October 1, 2010, Wells Fargo executed a Foreclosure Deed whereby Wells Fargo, in its own name and not on behalf of any other entity, conveyed legal title to Fannie Mae for $68,289.21.  (Doc. 28-1 at 34-36).  The Foreclosure Deed was recorded in Mobile County Probate Court on October 19, 2010.  (Doc. 30-9; Doc. 28-1 at 34).

On July 25, 2011, Giles initiated a one (1) count complaint against Wells Fargo for violating the *Truth in Lending Act*, 15 U.S.C. §1601 *et seq* ("TILA") and its implementing Federal Reserve Board *Regulation Z*, 13 C.F.R. Part 226 *et seq.*[1]  Specifically, Giles alleges that the "Defendant failed to provide notice of the transfer of ownership interest in Plaintiff's mortgage loan" as required under Section 1641(g).  (Doc. 2 at 1).

## II.   Conclusions of Law

### A.   Standard of Review

 "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a) (Dec. 2010).   Rule 56(c) provides as follows:

---

[1]  Giles initiated this action as a class action complaint.  However, at the present stage the Court addresses only the merits of Giles' individual claim as set forth in Count One.

4

>    ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>    >    **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>    >    **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
>    ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
>    ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
>    ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment. See, e.g., Am. Bankers Ins. Group v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005); Gerling Global Reins. Corp. of Am. v. Gallagher, 267 F.3d 1228, 1233 (11th Cir. 2001). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted). The Court is mindful that "'[w]hen both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.'" Muzzy Prods., Corp. v. Sullivan Indus., Inc., 194 F. Supp. 2d 1360, 1378 (N.D. Ga. 2002)). The Court has reviewed the facts submitted by each party and has made its own examination of the evidentiary record.

## B.   Discussion

Giles alleges that Wells Fargo violated TILA because the bank failed, within 30 days, to make the required disclosures under Section 1641(g) -- "to provide notice of the transfer of ownership interest in Plaintiff's mortgage loan." (Doc. 2 at 1). Section 1641(g) provides for "Notice of New Creditor" as follows:

> In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including— (A) the identity, address, telephone number of the new creditor; (B) the date of transfer; (C) how to reach an agent or party having authority to act on behalf of the new creditor; (D) the location of the place where transfer of ownership of the debt is recorded; and (E) any other relevant information regarding the new creditor.

Section 1641(g)'s disclosure requirements only apply if a party is a "covered person" as defined

in Regulation Z.  Section 226.39 of *Regulation Z* implements Section 1641(g), and defines

"covered person" as:

> any person that becomes the owner of an existing mortgage loan by acquiring legal title
> to the debt obligation, whether through a purchase, assignment or other transfer, and who
> acquires more than one mortgage loan in any twelve month period. For purposes of this
> section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if
> the servicer holds title to the loan, or title is assigned to the servicer, solely for the
> administrative convenience of the servicer in servicing the obligation.

12 C.F.R. § 226.39(a)(1).  Additionally, Section 1641(f)(1)-(2) provides as follows with regard

to Treatment of a Servicer:

> (1) In general
> A servicer of a consumer obligation arising from a consumer credit transaction shall not
> be treated as an assignee of such obligation for purposes of this section unless the
> servicer is or was the owner of the obligation.

> (2) Servicer not treated as owner on basis of assignment for administrative convenience
> A servicer of a consumer obligation arising from a consumer credit transaction shall not
> be treated as the owner of the obligation for purposes of this section on the basis of an
> assignment of the obligation from the creditor or another assignee to the servicer solely
> for the administrative convenience of the servicer in servicing the obligation. Upon
> written request by the obligor, the servicer shall provide the obligor, to the best
> knowledge of the servicer, with the name, address, and telephone number of the owner of
> the obligation or the master servicer of the obligation.

As framed by the parties, the issues on summary judgment are thus: 1) whether Wells

Fargo is the owner of the mortgage loan; and 2) if so, whether Wells Fargo is entitled to the

servicer exception regarding "administrative convenience."   In considering these issues, the

Court is mindful that "[]the Eleventh Circuit has emphasized the strong remedial purpose of

TILA and has heeded continual admonitions that we construe TILA...liberally in the consumer's

favor[]").  See, e.g., Brown v. CitiMortgage, Inc., 2011 WL 4809142, *4 (S.D. Ala. Oct. 11,

2011).

**1.    Whether Wells Fargo is The "Owner" of the Mortgage Loan**

Wells Fargo initially contends that it is not a "covered person" under TILA because it

was never the owner of Giles' underlying debt, Note, and Mortgage ("the loan"), as it was merely the servicer of the loan *for Fannie Mae*.  Giles contends that Wells Fargo became the owner of the loan when it was transferred to Wells Fargo via the July 2010 Assignment.

A review of the relevant documents and factual background indicates there is insufficient evidence from which a fact finder could find that Wells Fargo was not the owner of the loan. Specifically, Giles' mortgage granted MERS all of the rights vested in the Lender and MERS then conveyed all of those rights to Wells Fargo via the July 1, 2010 Assignment.   The Assignment states that MERS transfers to Wells Fargo the "Mortgage, together with the note and indebtedness secured by the Mortgage, and all interest of the undersigned [MERS] in and to the property described in said Mortgage[]" and "*all* right, title and interest" of MERS.  (Doc. 28-1 at 25).  As noted supra, MERS' rights includes "the right to foreclose and sell the Property[] and to take any action required of Lender…"  (Doc. 28-1 at 9).  As such, all of the rights held by the Lender necessary for foreclosure (including right of sale, title and ownership rights) were conveyed to MERS, and then in July 2010, assigned to Wells Fargo.  Because of the powers conveyed to MERS, and then assigned to Wells Fargo, the Assignment to Wells Fargo conveyed *all* of MERS' interest including the powers vested in the Lender (*i.e.*, title and ownership of the debt).

Additionally, Wells Fargo corresponded with Giles as the creditor.  Wells Fargo issued a foreclosure notice in its name, to Giles, as the creditor.  When Wells Fargo began the foreclosure process, it made clear to Giles that it was the entity accelerating the debt owed under the note: "Wells Fargo Home Finance, LLC hereby accelerates to maturity the entire remaining unpaid balance of the debt."  (Doc. 30-6).  Wells Fargo published the foreclosure notice stating that Giles' mortgage was "transferred and assigned to Wells Fargo Home Finance, LLC" and that

Wells Fargo would be the entity executing the power of sale and which would sell her home at the auction "for the purpose of paying the indebtedness secured by said mortgage." (Id.) Likewise, the Foreclosure Deed was executed by Wells Fargo in its own name (not on behalf of any other entity). None of the relevant documents identify any other entity, other than Wells Fargo, as the acting party for the foreclosure. There was no reference to Fannie Mae (as owner or otherwise) up to the date of the October 2010 foreclosure. Only when Wells Fargo recorded the foreclosure deed as the creditor and conveyed title (necessarily meaning that Wells Fargo had title and ownership to so convey) to Fannie Mae in this deed did Fannie Mae's name appear as the new owner of Giles' loan. Thus, there are insufficient facts to support a finding other than that Wells Fargo became the owner of the mortgage loan.

### 2. Whether the Assignment was "Solely for Administrative Convenience"

Wells Fargo claims that if found to own the loan from the Assignment, the Assignment was nevertheless made "solely for its administrative convenience" as a servicer such that it is exempt from TILA's requirements per Section 1641(f)(2).

Under the language of Section 1641(f)(2), Wells Fargo, as a servicer, will not be treated as an owner (and thus be subject to the notice requirements of Section 1641(g)) on the basis of assignment if the assignment is "solely for the administrative convenience of the servicer in servicing the obligation." 15 U.S.C. § 1641(f)(2). In Gale v. First Franklin, 686 F.3d 1055, 1060 (9th Cir. 2012) the court explained, "Congress did not intend that all servicers who owned loans would be liable as assignees. Paragraph (f)(2) carves out an exception to the general rule of paragraph (f)(1), so that servicers who are merely nominal assignees (that is, when a servicer is assigned ownership of the loan solely for 'administrative convenience') would not be liable on the same basis as actual owners of the loan." Thus, if Wells Fargo is a nominal assignee, the

notice requirements are not applicable.

While Wells Fargo obtained ownership of Giles' loan via the July 2010 assignment from MERS, such ownership was necessary to fulfill its servicing requirements.  Specifically, part of the agreement to service the loan included conducting foreclosure.  The Fannie Mae Guidelines, which govern the relationship between Fannie Mae and Wells Fargo state "[w]hen MERS is the mortgagee of record, the servicer must prepare an assignment from MERS to the servicer and bring the foreclosure in its own name…[t]he assignment must be prepared and executed before the foreclosure begins."  (Doc. 28-1 at 28 (Section 105 Conduct of Foreclosure Proceedings (5/1/10)).  The Guidelines also provide that "[i]n order to ensure that a servicer is able to perform the services and duties incident to the servicing of the mortgage loan, Fannie Mae temporarily gives the servicer possession of the mortgage note whenever the servicer, acting in its own name, represents the interest of Fannie Mae in foreclosure actions…or other legal proceedings."  (Doc. 28-3 at 3, Section 202.07.02 Temporary Possession by the Servicer).  Thus, in order for Wells Fargo to fulfill its obligations as a servicer for Fannie Mae, it was necessary to transfer ownership of the loan to Wells Fargo.  The evidence establishes that the transfer was for the "administrative convenience" of Wells Fargo.

Plaintiff argues that it was not "solely" for Wells Fargo's convenience because Fannie Mae received a benefit, *i.e.*, avoidance of a transfer tax and recording expenses.  However, if a servicer could not avail itself of the exception because its principal received some benefit, then the exception itself would be a nullity; the reason Fannie Mae contracts out the servicing of the loan (including foreclosure) is because it benefits Fannie Mae to do so.  Moreover, read in context, "solely for the administrative convenience of the servicer" is an endeavor to limit the exclusion to servicers who receive no financial interest in the transferred loan.  Thus, it is the

status of the servicer and the reason for the transfer that must be examined in determining whether the exclusion applies. There is no evidence that Wells Fargo was anything other than a nominal owner of the loan. Moreover, there is no evidence that the loan was transferred to the Wells Fargo for any purpose other than to allow Wells Fargo to fulfill its obligations as a servicer. Accordingly, Wells Fargo is not subject to liability for failing to provide notice of the transfer.

## III.   Conclusion

Accordingly, it is **ORDERED** that the Defendant's Motion for Summary Judgment (Docs. 27, 28, 34) is **GRANTED** as set forth *supra*, such that the Plaintiff's Motion for Summary Judgment (Docs. 29, 30, 31) is **DENIED.**

It is further **ORDERED** that the parties shall file, on or before **September 28, 2012**, a Joint Status Report indicating the status of the class claims in this case in light of the summary judgment ruling as well as any reasons why entry of Final Judgment should not issue in this case.

**DONE** and **ORDERED** this **14th** day of **September 2012.**

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**