[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15567
Non-Argument Calendar
_____

Docket No. 1:11-cv-00405-KD-M

LAKEESHA G. GILES,
Individually and on behalf of all similarly
situated individuals,

                  Plaintiff-Appellant,

versus

WELLS FARGO BANK, N.A.,

                  Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(May 23, 2013)

Before WILSON, ANDERSON, and EDMONDSON, Circuit Judges.


PER CURIAM:

      LaKeesha G. Giles appeals the district court's grant of summary judgment in favor of Wells Fargo Bank, N.A. ("Wells Fargo"). Giles's complaint alleged that

Wells Fargo violated the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), by failing to provide notice of a transfer of ownership in Giles's mortgage loan, as required by section 1641(g).  No reversible error has been shown; we affirm.

In 2007, Giles executed a Promissory Note ("Note") in favor of America South Mortgage Corporation.[1]  The Note was secured by a mortgage on real property ("Mortgage") which named Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee.

The Mortgage identified America South as the "Lender" and described MERS as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."  The Mortgage conveyed to MERS (as nominee) legal title to the property and granted to MERS (as nominee) the power of sale.  The Mortgage also said that "MERS holds only legal title to the interests granted by [Giles] . . . , but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

In late 2007, the Federal National Mortgage Association ("Fannie Mae") purchased the Note.  In 2008, servicing of the loan was transferred to Wells Fargo.

---

[1] Sometime later, America South executed an allonge to the Note, transferring ownership of the Note to AmTrust Bank; and AmTrust Bank endorsed the allonge in blank.

Pursuant to guidelines governing the relationship between Fannie Mae and Wells Fargo, Wells Fargo held the original executed Note as a custodian on behalf of Fannie Mae.[2]

In June 2010, Wells Fargo sent Giles a "Notice of Acceleration of Promissory Note and Mortgage" notifying Giles that, because she had defaulted on her payments, Wells Fargo would commence foreclosure proceedings.  In July 2010, MERS executed an "Assignment of Mortgage" ("Assignment"), transferring to Wells Fargo "all right, title and interest of [MERS] in and to that certain Mortgage executed by [Giles], . . . together with the note and indebtedness secured by the Mortgage, and all interest of [MERS] in and to the property described in said Mortgage."  On appeal, Giles acknowledges that "[i]t is undisputed that the purpose of the assignment was . . . to allow Wells Fargo to conduct a foreclosure in its own name and that this was required by Fannie Mae's Guidelines."[3]  Wells Fargo did not provide a Notice of New Creditor to Giles following the Assignment.

In October 2010, Wells Fargo conducted a foreclosure sale of Giles's property and conveyed legal title to the property to the highest bidder: Fannie Mae.

---

[2] Fannie Mae's Guidelines specify that "the document custodian has custody of the note for Fannie Mae's exclusive use and benefit."

[3] Fannie Mae's Guidelines on foreclosure proceedings say "[w]hen MERS is the mortgagee of record, the servicer must prepare an assignment from MERS to the servicer and bring the foreclosure in its own name . . . [and] [t]he assignment must be prepared and executed before the foreclosure begins."

3

Giles filed this civil action, alleging that Wells Fargo failed to abide by section 1641(g)'s notice requirement, which Giles asserted was triggered by the Assignment. The district court granted Wells Fargo's motion for summary judgment, concluding that Wells Fargo was not required to provide notice under section 1641(g).

We review a district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. Galvez v. Bruce, 552 F.3d 1238, 1241 (11th Cir. 2008). Summary judgment is appropriate where the record presents no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Swisher Int'l, Inc. v. Schafer, 550 F.3d 1046, 1050 (11th Cir. 2008). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010).

Section 1641(g) requires that, within "30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . ." 15 U.S.C. § 1641(g)(1). Based on its plain language, section 1641(g)'s disclosure obligation is triggered only when ownership

of the "mortgage loan" or "debt" itself is transferred, not when the instrument securing the debt (that is, the mortgage) is transferred.

But Giles argues that, under Alabama law, "the transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise." See Crum v. LaSalle Bank, N.A., 55 So. 3d 266, 269 (Ala. Civ. App. 2009). Alabama law also requires that a foreclosure be undertaken only by an entity entitled to receive the money secured by the mortgage. See Ala. Code § 35-10-1.

Even if we assume -- without deciding -- that Wells Fargo became the owner of both the Mortgage and the Note as a result of the Assignment, Wells Fargo was not subject to section 1641(g)'s notice requirement because the Assignment was made "solely for [Wells Fargo's] administrative convenience." See 15 U.S.C. § 1641(f). Under section 1641(f), a servicer "shall not be treated as the owner of the obligation" -- and, thus, is not subject to section 1641(g)'s notice requirement -- if the servicer was assigned the obligation "solely for the administrative convenience of the servicer in servicing the obligation." Id.

The phrase "administrative convenience" is not defined by TILA. In construing the statute's language, "we 'start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used." In re James, 406 F.3d 1340, 1343 (11th Cir. 2005). The term "convenience" means

5

"fitness or suitability for performing an action or fulfilling a requirement." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary (last visited Mar. 25, 2013). And the term "administration" means of or relating to the act or process of managing. See id. (defining "administrative" as "of or relating to administration," "administration" as "the act or process of administering," and "administering" as "managing"). Thus, the ordinary meaning of the phrase "administrative convenience" is that which permits a person to perform an action or fulfill a requirement in the process of managing whatever is being managed.

To the extent that Wells Fargo was assigned the Note, the assignment enabled Wells Fargo both to conduct a valid foreclosure proceeding under Alabama law and, therefore, to carry out its duties as servicer to Fannie Mae. Thus, the Assignment was "administratively convenient" to Wells Fargo. And Fannie Mae's Guidelines make clear that such assignment was temporary and made solely for the purpose of completing the foreclosure proceeding.[4]

---

[4] The Guidelines provide that, except in limited circumstances such as in foreclosure actions, "Fannie Mae is at all times the owner of the mortgage note . . . [and] "at all times . . . is the holder of the mortgage note." When a servicer, acting in its own name, represents Fannie Mae's interests in a foreclosure action, however, Fannie Mae temporarily gives the servicer possession of the mortgage note "to ensure that a servicer is able to perform the services and duties incident to servicing of the mortgage loan." When the foreclosure action is complete, "possession [of the mortgage note] automatically reverts to Fannie Mae, and Fannie Mae resumes being the holder for itself."

Giles argues that, because Fannie Mae saved itself some trouble and benefitted from avoiding conducting the foreclosure in its own name, the Assignment was not made "solely" for Wells Fargo's administrative convenience. But, as the district court explained, "if a servicer could not avail itself of the ["administrative convenience"] exception because its principal received some benefit, then the exception itself would be a nullity; the reason Fannie Mae contracts out the servicing of the loan (including foreclosure) is because it benefits Fannie Mae to do so." That Fannie Mae benefitted from having Wells Fargo conduct the foreclosure proceeding did not change the fact that the Assignment itself enabled Wells Fargo to fulfill its obligations as servicer.

Because Wells Fargo falls within the scope of section 1641(f)'s "administrative convenience" exception, it was not required to notify Giles of the Assignment. No genuine issue of material facts exists; Wells Fargo was entitled to summary judgment.

AFFIRMED.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 23, 2013

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 12-15567-AA
Case Style: Lakeesha Giles v. Wells Fargo Bank, N.A.
District Court Docket No: 1:11-cv-00405-KD-M

On April 1, 2013, this Court began **MANDATORY electronic filing.** All counsel are required to file documents electronically in appeals pending on April 1, 2013, and in appeals docketed in this Court on or after that date, unless exempted for good cause. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1.

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Eleanor M. Dixon, AA at (404) 335-6172.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs